**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Javier Arellano, | No. CV-16-03423-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| San Luis, City of, et al., | |
| Defendants. | |

Plaintiff Javier Arellano filed a complaint against numerous Defendants seeking monetary and equitable relief for an alleged violation of his rights under the Fourteenth Amendment to the United States Constitution. Doc. 1. Four separate motions to dismiss have been filed by various Defendants. Docs. 73, 75, 77, 80. These motions are fully briefed, and the Court concludes that oral argument is not necessary. For the reasons that follow, the Court will grant three of the four motions to dismiss.

**I.     Background.**

According to Plaintiff's amended complaint, he was hired as a police officer with the City of San Luis Police Department in 1995.[1]  Doc. 7, ¶ 23.  He received various promotions over the years, ultimately reaching the rank of Commander. *Id.*, ¶ 25. In 2014, City of San Luis Police Chief Arturo Ramos took a leave of absence, and Plaintiff became Acting Chief of Police. *Id.*, ¶¶ 25, 27.  Chief Ramos had a standing verbal order

---

[1] At this stage, Plaintiff's factual allegations are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

that any San Luis police officer who had on-duty contact with any person who was widely known, celebrated, or politically connected, should reported the contact to the Chief. *Id.*, ¶ 26.

On January 21, 2014, a San Luis police officer issued a traffic citation to Luz Harper, the wife of City Council Member Joe Harper. *Id.*, ¶ 29. Within minutes, Harper contacted on-duty police lieutenant Ernesto Lugo allegedly to complain about the ticket. Lugo advised Plaintiff about the issuance of the ticket, and Plaintiff retrieved the citation and kept it in his office unprocessed for several months. *Id.*, ¶¶ 31-32. On August 4, 2014, David Lara, a private citizen, requested a copy of the citation. Plaintiff located the ticket in his office, noted that it was over six months old and thus legally void, and dismissed it before providing the copy to Lara. *Id.*, ¶ 37. An administrative investigation into the incident was undertaken by the City Manager, City Attorney, and City Council. *Id.*, ¶ 38. An administrative termination hearing on December 11, 2014 resulted in a termination recommendation. *Id.*, ¶¶ 41-42. The hearing officer for appeals of employment termination matters, Ellen Van Riper, upheld the recommendation. *Id.*, ¶¶ 40, 42.

**II.     Legal Standard.**

A successful motion to dismiss under Rule 12(b)(6) must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

**III. Analysis.**

Plaintiff alleges that Defendants violated his Fourteenth Amendment Due Process rights by depriving him of a protected property interest in his continued employment without valid pre-termination and post-termination proceedings. Doc. 7, ¶¶ 21, 39.[2] The Court will address each of the four motions to dismiss in turn.

**A. Defendant David Lara's Motion.**

Defendant Lara argues that Plaintiff's claims against him should be dismissed because Plaintiff has not alleged that Lara had anything to do with Plaintiff's termination and thus has failed to state a claim upon which relief can be granted. Doc. 80. Plaintiff contends that his complaint, taken as a whole, shows that Lara was part of a conspiracy or "illegal agreement to remove the Plaintiff from his job and is therefore subject to suit." Doc. 84.

Plaintiff's amended complaint alleges that "[t]he City and its officials used biased and corrupt termination procedures to deprive Plaintiff of his Constitutional right to earn a living as a law enforcement officer. The rights violated are guaranteed by the Due Process and Equal Protection Clauses of the 14th Amendment to the United States Constitution and protected by 42 U.S.C. § 1983." Doc. 7, ¶ 1. With respect to Defendant Lara specifically, Plaintiff contends only that Lara, "in coordination with Miguel Alvarez, Lt. Lugo, the city officer and Does 1-20, delivered to the police department a request for a copy of the citation specifying the citee by name, the citation number, the date of issuance and what the citation was for." *Id.*, ¶ 36. Plaintiff alleges that he directed a copy of the citation to be provided to Lara. *Id.*, ¶ 37.

Broadly, Plaintiff contends:

---

[2] Plaintiff appears to allege that other statutory and state constitutional rights were violated, but does not state any cause of action based on these rights. *Id.*, ¶¶ 50, 51.

- 3 -

> [E]ach of the defendants herein was, at all times relevant to this action, the agent, employee, partner, political ally or joint venture of the remaining defendants and was acting within the course and scope of that relationship at all times described in this complaint. . . . [E]ach of the defendants herein gave consent to, participated in matters wherein they had a conflict of interest, ratified, and authorized the acts alleged herein to each of the remaining defendants.

*Id.*, ¶ 5.

"Section 1983 is a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (quotation marks and citation omitted). To state a claim under § 1983, a plaintiff must allege two distinct elements: (1) the violation of a right secured by the Constitution or laws of the United States, (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Dismissal of a § 1983 claim "is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element." *Naffe*, 789 F.3d at 1036.

A person acts under color of state law if he exercises "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49 (quotation marks omitted). This requirement generally limits § 1983 suits to claims against public officials. To establish that a private individual, like Lara, acted under color of state law, a plaintiff must show that the individual "conspired or acted jointly with state actors to deprive the plaintiff[] of [his] constitutional rights.'" *Radcliffe v. Rainbow Const. Co.,* 254 F.3d 772, 783 (9th Cir. 2001) (citing *United Steelworkers v. Phelps Dodge Corp.,* 865 F.2d 1539, 1540 (9th Cir. 1989)). This requires evidence of "an agreement or meeting of the minds to violate constitutional rights." *Id.* (quoting *Phelps Dodge,* 865 F.2d at 1540-41). "A relationship of cause and effect between the complaint and the prosecution is not sufficient, or every citizen who complained to a prosecutor would find himself in a conspiracy." *Id.*

The Supreme Court has made clear that a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Discovery will not be available to a party "armed with nothing more than conclusions." *Id.* at 678-79.

Plaintiff relies on his contention that an "illegal agreement" existed between Lara and the other Defendants. Plaintiff's "assertion of an unlawful agreement [i]s a legal conclusion" not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 680. Plaintiff provides no factual allegations that would show an agreement or meeting of the minds. *See Radcliffe*, 254 F.3d at 783. He argues in his motion, but did not assert in his amended complaint, that Lara delivered the copy of the citation "to whomever initiated the process that led to the ultimate dismissal of the Plaintiff." Doc. 84 at 3. But merely furnishing information to a police officer, prosecutor, or other government official is not sufficient to establish a conspiracy and satisfy the second element of a § 1983 claim. *Radcliffe*, 254 F.3d at 783; *Banerjee v. Cont'l Inc., Inc.*, No. 216CV669JCMVCF, 2016 WL 5939748, at *3 (D. Nev. Oct. 11, 2016) (quoting *Lockhead v. Weinstein*, 24 F. App'x 805, 806 (9th Cir. 2001)). Nor does submitting a request for public information as a private citizen constitute action under color of state law. As a result, Plaintiff has provided no facts, accepted as true, that would establish Lara acted under color of state law in causing a violation of Plaintiff's rights. Plaintiff's claims against Lara will be dismissed.

**B. Defendant Ellen Van Riper's Motion.**

Defendant Van Riper argues that she has absolute immunity from suit related to her performance of quasi-judicial functions. Doc. 77 at 2. Plaintiff contends that absolute immunity does not apply because Van Riper is a contract worker, not a full time employee of the City of San Luis; the City exercised financial control over her compensation; and Van Riper consulted with and was directed by the City's Attorney and Managers throughout the matter. Doc. 81 at 5. Van Riper bears the burden of establishing absolute immunity. *Burton v. Infinity Capital Mgmt.*, 753 F.3d 954, 959 (9th Cir. 2014) ("The proponent of a claim for absolute immunity bears the burden of establishing that such immunity is justified.") (quotation marks omitted).

"It has long been established that judges are absolutely immune from liability for acts done by them in the exercise of their judicial functions[,]" and "[t]he Supreme Court has extended such absolute immunity to other public officials who perform activities that are functionally comparable to those of judges." *Miller v. Davis*, 521 F.3d 1142, 1145 (9th Cir. 2008) (citations and quotation marks omitted). To determine whether a public official is performing "quasi-judicial functions" entitled to absolute immunity, courts consider "the nature of the responsibilities of the individual official," rather than his rank, title, or location within the government. *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985). The Supreme Court has provided several specific factors to consider when making this determination: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Id.* at 202 (citing *Butz v. Economou*, 438 U.S. 478, 512 (1978)).

Plaintiff's amended complaint alleges only that Van Riper "is the Hearing Officer for appeals of employment termination matters[,]" and that she "decided to uphold the City's termination recommendation[.]" Doc. 7, ¶ 40, 42. Van Riper is additionally identified as "a Hearing Officer for the City of San Luis." *Id.*, ¶ 8. The Court has not been provided with any information concerning Van Riper's responsibilities as hearing officer, how she was selected and may be removed from it, what procedures she employed in the hearing regarding Plaintiff's termination, the nature of the hearing process, or any appeal mechanisms. As a result, Van Riper has not met her burden of establishing absolute immunity for purposes of this motion to dismiss.[3] Because the

---

[3] Van Riper cites a Ninth Circuit case for the proposition that hearing officers are entitled to absolute immunity. Doc. 77 at 3 (citing *Demoran v. Witt*, 781 F.2d 155, 156 (9th Cir. 1985)). *Demoran* points out that the Supreme Court in *Butz* extended absolute immunity to *federal* hearing officers and administrative law judges. 781 F.2d at 156. In extending absolute immunity in this way, *Butz* explicitly reviewed the characteristics of "adjudication within a federal administrative agency" and concluded that "[t]here can be

- 6 -

Court is denying Van Riper's motion on this ground, the Court will also deny her related request for attorneys' fees. Doc. 77 at 4-5.

In the alternative, Van Riper asks the Court to dismiss Plaintiff's claim under Federal Rule of Civil Procedure 12(b)(5) for failure to effect service within the 90 days prescribed under Rule 4(m). *Id.* at 3-4. Rule 4(m) provides that the court "must extend the time for service" upon a showing of "good cause," but "even without a showing of good cause, a district court may utilize its 'broad' discretion to extend the time for service." *United States v. 2,164 Watches*, 366 F.3d 767, 772 (9th Cir. 2004) (quoting *In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001)). The Ninth Circuit has recognized that, "[a]t a minimum, 'good cause' means excusable neglect." *In re Sheehan*, 253 F.3d at 512 (quoting *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991)).

Plaintiff filed his complaint on October 6, 2016, and his amended complaint on October 24, 2016. Docs. 1, 7. On February 8, the Court ordered Plaintiff to show cause as to why his complaint should not be dismissed for failure to serve the summonses and complaint on Defendants. Doc. 52. Plaintiff executed service on Van Riper and the other Defendants on February 17. Doc. 58. He filed these summonses and a response to the Court's order on February 21. Doc. 53, 58. Thus, Plaintiff served Van Riper 134 days after the filing of his initial complaint and 116 days after the filing of the amended complaint. Plaintiff's response to the Court's order appears to be incomplete and does not explain why he failed to effect service within the time prescribed. He attached several emails between Plaintiff's counsel's office and the process server discussing service. Doc. 53-1. The earliest of these emails was sent on February 10, 2017, and it does not indicate when Plaintiff's counsel first made an effort to serve Defendants or why service was delayed. *Id.*

---

little doubt that the role of the modern *federal* hearing examiner or administrative law judge within this framework is 'functionally comparable' to that of a judge." 438 U.S. at 512-13 (emphasis added). Van Riper, a local hearing officer, has not provided the facts to show that she is entitled to absolute immunity.

Plaintiff now presents new reasons why he was unable to comply with Rule 4(m). Doc. 81 at 3-4. Plaintiff's counsel submitted the summonses in this matter on November 15, 2016, but was asked to resubmit by the clerk due to a failure to provide attorney information. *Id.* at 3. He resubmitted on November 18, but a further notice of defect was received on December 8. The summonses were resubmitted on December 21. All summonses were issued by the clerk and provided to the process server, Luis Figueroa, in Yuma County on the same day. Plaintiff's counsel followed up on the service progress on January 17, 2017 and was told that "all was in order and [Luis Figueroa] was still checking on current addresses for some defendants and specifically Joe Harper." *Id.* at 4.

Plaintiff alleges that service should have been completed on all Defendants by January 22, 2017, and his counsel did not learn that no Defendants had been served until February 10, 2017. Plaintiff alleges that he "was blind-sided by the hidden blood relationship of the process server to one of the defendants," *id.* at 8, a relationship which he first discovered on February 15, 2017, when the process server "indicated he was unwilling to serve his relative and that the documents have been given to the Yuma County Sheriff for service," *id.* at 4. Plaintiff further argues that the process server declined to serve anyone because his relative was involved. *Id.* at 7. He emphasizes that all Defendants have been served as of February 17, Defendant has not alleged prejudice resulting from the delay, and the statute of limitations has passed so that Plaintiff could not refile if his claim is dismissed. *Id.*

Plaintiff's contentions appear to be contradicted by the emails he attaches to his response to the Court's order to show cause. On February 15, 2017, the process server indicated that he had already served Defendant Harper and was still attempting to serve Defendants Lara and Lugo. Doc. 53-1 at 3. He did state that the "sheriff's office is going to serve Victor Figueroa's documents due to him being related to me," but did not otherwise refuse to serve any of the other Defendants. Moreover, on February 14, an assistant to Plaintiff's counsel indicated to the process server that he did not need to make

the service on individuals outside of Yuma County – namely Defendants Eads and Van Riper. *Id.* at 6. Thus, any issue stemming from the process server's relationship to one of the Defendants does not appear to be relevant to Plaintiff's failure to timely serve Van Riper. Luis Figueroa also appears to have signed the affidavits of service for the majority of Defendants. Docs. 54-57, 59-68, 70. The Court concludes that Plaintiff has not shown good cause for his failure to comply with Rule 4(m).

Even if a plaintiff fails to establish good cause, a Court may exercise its "broad discretion" to extend the time for service. *2,164 Watches*, 366 F.3d at 772 (citation omitted). The Court will do so here. Plaintiff's counsel obtained all of the summonses within 90 days, and all Defendants have been served as of February 17. Moreover, Van Riper has not alleged that she suffered any prejudice as a result of Plaintiff's delayed service. The parties agree that the statute of limitations has passed on Plaintiff's claim, meaning that any dismissal for improper service would result in Plaintiff's inability to refile. The Court will exercise its discretion to deny Van Riper's motion to dismiss for failure to comply with Rule 4(m).

### C. City Council Defendants' Motion.

Defendants Joe Harper, Matias Rosales, Africa Luna-Carrasco, Marco Pinzon, Gloria Torres, and Maria C. Ramos (collectively, the "City Council Defendants") similarly argue that they have absolute immunity from suit related to their performance of quasi-judicial functions. Doc. 73 at 3. Plaintiff sues these Defendants in their individual and official capacities, alleging that they violated his rights by voting to uphold his termination. Doc. 82 at 3. Plaintiff argues that the "administrative act of termination is not protected by absolute immunity for a Council person just as a judge is not given absolute immunity when he terminates an employee." *Id.* at 5.

City Council Defendants cite a Ninth Circuit case for the proposition that board members who are substantive decision makers are entitled to absolute judicial immunity. Doc. 73 at 4 (citing *Buckles v. King Cty.*, 191 F.3d 1127, 1136 (9th Cir. 1999)). *Buckles* held that the board members were entitled to absolute immunity only after engaging in an

analysis of the characteristics of the board and the relevant proceedings using the *Butz* factors. 191 F.3d at 1134-35 (discussing Washington code which delineates the rules, procedures, and regulations of the growth management hearings board). Neither party has provided the court with any information about the City Council and the procedures it employed in upholding Plaintiff's termination. As a result, the Court is unable to apply the *Butz* factors and determine whether the City Council Defendants were engaged in quasi-judicial activities. Because the burden of proof lies with Defendants, the Court will not dismiss Plaintiff's claim on this ground.

City Council Defendants also seek dismissal of Plaintiff's claim because the complaint does not provide fair notice of what the claim is and the grounds upon which it rests, as required by Rule 8 of the Federal Rules of Civil Procedure. Doc 73 at 4-5. Plaintiff does not address this argument in his brief.[4] The Court agrees that Plaintiff has not pleaded sufficient factual allegations, accepted as true, to state a claim against City Council Defendants "that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.

As discussed, to state a claim under § 1983, a plaintiff must allege two distinct elements: (1) the violation of a right secured by the Constitution or laws of the United States, (2) by a person acting under the color of state law. *West*, 487 U.S. at 48. Plaintiff's general allegation that Defendants engaged in a conspiracy to violate his Fourteenth Amendment rights is a legal conclusion not entitled to an assumption of truth, and Plaintiff has provided no facts which would support his allegation of a conspiracy.

Plaintiff provides the same allegations with respect to each individual city council member: the member "was aware of the illegal termination conduct which was known, permitted and ratified by the City Administration, City Attorney and the City Council.

---

[4] Defendants argue that Plaintiff has conceded this point by failing to respond to it. Doc. 86 at 4. "Even where a party fails to oppose a Rule 12(b)(6) motion, a court may assess the legal sufficiency of a complaint." *Bolbol v. City of Daly City*, No. C-09-1944 EMC, 2011 WL 3156866, at *2 (N.D. Cal. July 26, 2011); *see also McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."); *Martinez v. Aycock-W.*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016).

Later this Defendant, on information and belief, encouraged the termination of the Plaintiff and voted to uphold the termination of the Plaintiff. The actions of this Defendant protected the political position of fellow councilman Joe Harper with the City of San Luis." Doc. 7, ¶¶ 11-15.[5] Additionally, Plaintiff alleges that Defendants failed "to provide valid pre-termination and post-termination proceedings." *Id.*, ¶ 53. He contends that the City Manager, City Attorney, and City Council improperly ordered the scope of the investigation into the dismissal of the citation to be limited to Plaintiff and another police officer. *Id.*, ¶ 38.

Plaintiff has not sufficiently pleaded a violation of his procedural due process rights committed by the City Council Defendants.[6] "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). The City Council Defendants do not dispute that Plaintiff had a property interest in his employment. As a result, they were required to provide him with sufficient process before depriving him of that interest. The essential elements of due process are notice and a meaningful opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Relevant here, the Ninth Circuit has held that a city employee is entitled to be heard by an *impartial* adjudicator before his employment may be terminated. *Walker v. City of Berkeley*, 951 F.2d 182, 183 (9th Cir. 1991).

---

[5] Plaintiff's allegations regarding Defendant Harper contain some differences, but these differences do not alter the Court's analysis. *See* Doc. 7, ¶ 10.

[6] Plaintiff also contends that his equal protection rights were violated. He has failed to allege that he was treated differently from any other similarly situated individual, and thus has not sufficiently pleaded a violation of equal protection. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

An allegation that Defendants did not provide valid pre-termination and post-termination proceedings is a legal conclusion not entitled to an assumption of truth. Plaintiff does not assert how his termination proceedings were invalid other than to allege that Defendants were biased and caused the hearing officer, Van Riper, to be biased. Doc. 7, ¶¶ 39, 40 ("The City Manager, City Attorney, Council of the City of San Luis and its staff had a direct conflict of interest in this investigation," and Van Harper "was made biased by the City Administration and City Attorney"). Plaintiff provides no factual allegations to support his contention that the City Council Defendants improperly controlled Van Riper or caused her to be biased. Instead, he merely asserts that Van Riper "received impermissible direction from city staff as to the scope of the case against Plaintiff and the evidence to be adduced at his trial." *Id.*, ¶ 8. Such an allegation is "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Even accepting as true that Van Harper conferred with City officials, the lack of factual allegations against the City Council means that the Court cannot "infer more than the mere possibility of misconduct[.]" *Id.* at 679.

The fact that the City Council Defendants voted to uphold the termination of Plaintiff may be consistent with a deprivation of Plaintiff's procedural due process rights, but it is equally consistent with lawful behavior. Ordering that the scope of the investigation into the citation's dismissal be limited to Plaintiff and another police officer is similarly consistent with lawful behavior. What is more, Plaintiff does not provide, and the Court is not aware of, any case law suggesting that an adequate prehearing investigation is a required component of procedural due process. *See Diaz v. McGuire*, 154 F. App'x 81, 85 (10th Cir. 2005) ("An adequate prehearing investigation is not among the minimum due process protections"); *Brown v. Frey*, 889 F.2d 159, 171 (8th Cir. 1989) (same); *Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995) (same). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Because Plaintiff has not sufficiently

pleaded that he was deprived of the opportunity to be heard by an impartial adjudicator, he has not sufficiently pleaded a violation of his due process rights. Plaintiff's claims against the City Council Defendants will be dismissed.

### D. City Defendants' Motion.

Defendants City of San Luis, Gerardo Sanchez, Ralph Velez, Robert Eads, Tadeo De La Hoya, Miguel Alvarez, Ernesto Lugo, Victor Figueroa, and Glenn Gimbut (collectively, the "City Defendants") also seek dismissal for failure to comply with Rule 8. Doc. 75. Plaintiff argues that, taken as a whole, his complaint sufficiently alleges a plausible claim for relief against the City Defendants. Doc. 83 at 5. He contends that he does not know the role each Defendant played in the violation of his rights, but "he does know the end result was to make him the scape goat for a ticket fixed by a councilman and deny the Plaintiff a fair termination hearing. The overall picture is laid out in the complaint. Discovery will expose the role of each participant." *Id.* He only specifically addresses the allegations against Alvarez and the City of San Luis. *Id.* at 5-6. As already stated, Plaintiff's general assertion that all Defendants were part of a conspiracy to deny his Fourteenth Amendment rights is insufficient. The Court will consider the sufficiency of the specific allegations against each City Defendant in turn.

#### 1. City of San Luis.

Under § 1983, municipalities may not be held vicariously liable for violations of constitutional rights committed by employees. *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014). "[W]hile a municipality may not be held liable under § 1983 for the torts of its employees on a theory of *respondeat superior,* liability may attach where the municipality *itself* causes the constitutional violation through the execution of an official policy, practice or custom." *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002) (emphasis in original). Additionally, a municipality may be held liable "where the failure to train [its employees] amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiff alleges that Defendants were "negligent and deliberately indifferent in the hiring, training, retention, discipline and supervision of defendants Lugo, and Does I through 10[.]" Doc. 7, ¶ 66. Plaintiff also contends that the City of San Luis:

> has a longstanding custom, practice or policy of protecting its elected politicians by terminating employees, managers, police chiefs and police officers to protect the elected officials from the consequences of their misconduct. The City Council, City Managers, City Attorney and other staff have knowingly permitted direct interaction and control by elected politicians with the City's employees for the personal benefit of the elected officials. The City Staffers and Managers have permitted this circumvention of the proper functioning and organization of the City by permitting, encouraging, ratifying and covering up direct city employee contacts by politicians for personal benefit. This state of affairs has permitted the City's elected officials to directly control the city's employees, including law enforcement, in their jurisdiction, with impunity and leading to miscarriages of justice, violation of the Constitutional rights of employees to their property interest in continued employment and the denial of fair hearings for the employees before termination.

*Id.*, ¶ 7. Plaintiff alleges that the City of San Luis has a policy of "permitting the improper dismissal of tickets for friends and politically connected individuals," and has failed "to create a reliable tracking system on all issued tickets resulting in the negligent and/or intentional failure to pursue tickets issued to enforce the public order and safety." *Id.*, ¶ 67.

These allegations are insufficient to establish that the City of San Luis has a policy, practice, or custom that violated Plaintiff's constitutional rights. While he provides a conclusory legal allegation that such a policy, practice, or custom exists, he provides no factual support. He does not provide any example of other individuals who were terminated "to protect the elected officials from the consequences of their misconduct." Nor does he allege how the city officials have allowed elected officials to directly control city employees, or allege any examples of city officials covering up improper contacts between politicians and employees, or even any such improper contacts. He does not discuss his conclusory assertion of the City officials' deliberate

indifference to Plaintiff's rights in the hiring, training, retention, discipline and supervision of City employees. Plaintiff's conclusory contentions and minimal factual allegations do not allow the Court to infer that the City of San Luis plausibly has a policy, practice, or custom that has violated his Fourteenth Amendment rights.

Plaintiff also contends that the "City of San Luis made the Plaintiff's emails, working papers and calendar unavailable for use by the Plaintiff to defend himself at trial in order to deprive him of essential evidence and did not disclose evidence" of council misconduct and conflicts of interest. *Id.*, ¶ 47. He adds that the City "never interviewed, nor disclosed if it did interview, or considered critically the role of its City Councilman in the events," or "reveal[ed] or ma[d]e available the evidence related to the telephone calls, communications, orders and instructions involving various council members and their contacts with the police involved in this incident." *Id.*, ¶ 48. As a city itself is incapable of making evidence available, interviewing individuals, or disclosing whether or not it completed interviews, the Court assumes that these allegations refer to actions or failures to act by City officials and employees. But, as discussed, a municipality cannot be held vicariously liable through a theory of *respondeat superior*. A municipality will only be held liable under § 1983 if it has a policy, practice, or custom which has injured the plaintiff. Plaintiff's claims against the City of San Luis will be dismissed.

### 2. Sanchez, Velez, and Eads.

Defendant Sanchez is the mayor of San Luis. Doc. 7, ¶ 9. Defendant Velez was the city manager at the time of the events in question, and Defendant Eads is the successor city manager. *Id.*, ¶¶ 16, 17. Plaintiff sues all three only in their official capacities, and argues vaguely that they were "involved in," "permitted," "ratified," and "supervised" the conduct of the other Defendants, as well as "protected the councilman." *Id*. Thus it appears that Plaintiff is trying to sue these individuals under a theory of *respondeat superior*.

"An official capacity suit against a municipal officer is equivalent to a suit against the entity. When both a municipal officer and a local government entity are named, and

the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (citation omitted). The Court will dismiss the claims against Sanchez, Velez, and Eads as redundant.[7]

### 3. De La Hoya.

Defendant De La Hoya was the City's Director of Operations, and Plaintiff sues him in his individual and official capacities. Doc. 7. Plaintiff's complaint does not even mention De La Hoya, let alone give him fair notice of the claim against him. *Twombly*, 550 U.S. at 555, 570. Plaintiff's claims against De La Hoya will be dismissed.

### 4. Alvarez.

Defendant Alvarez is a police officer for the City of San Luis, and Plaintiff sues him in his official and individual capacities. Doc. 7, ¶ 18. Plaintiff contends that Alvarez was "involved in the divulging of police information to a political activist to assist in [] obtaining the firing of the Plaintiff in order to protect Councilman Harper. Mr. Alvarez was subsequently rewarded by the defendants by being promoted[.]" *Id.* But Plaintiff himself concedes that the copy of the citation was provided to Lara, the "political activist," under Plaintiff's own orders and "as required by law." *Id.*, ¶ 37. Plaintiff does not provide any cognizable legal theory for how Alvarez's actions cause a deprivation of Plaintiff's Fourteenth Amendment rights. Plaintiff tries to rely on Alvarez being "part of a larger group working to use the City's resources to further their individual political or financial interests," doc. 7 at 5, but general allegations of the existence of an agreement or conspiracy to deprive Plaintiff of his rights do not suffice to state a claim under § 1983. Plaintiff's claims against Defendant Alvarez will be dismissed.

### 5. Lugo.

Defendant Lugo is a former police lieutenant for the City of San Luis, and Plaintiff sues him in his official and individual capacities. *Id.*, ¶ 19. Plaintiff contends:

---

[7] The Court also reiterates that a municipality may not be held liable under a theory of *respondeat superior*. Thus, even if the claims were not dismissed, Plaintiff has not alleged a cognizable claim against these three Defendants in their official capacities.

- 16 -

> Lugo was directed by Councilman Harper to 'fix' the traffic ticket given to Mrs. Harper by a police officer of the City of San Luis, AZ. Mr. Lugo then involved the Plaintiff by having Plaintiff retrieve the traffic ticket from the issuing officer. Lugo . . . then secreted the ticket until such time as it became a political and employment issue. He then replaced the ticket in the Plaintiff's office to inculpate the Plaintiff in Lugo's and Harper's ticket fixing scheme which sought to protect Lugo's employment position and the elected position of councilman Harper[.]

*Id.* Assuming that Lugo was acting under the color of state law, Plaintiff has not alleged that Lugo violated Plaintiff's Fourteenth Amendment rights. Plaintiff contends that, after receiving the phone call from Harper directing that the ticket be "fixed," Lugo advised Plaintiff that "a patrol officer had cited a politician's wife and that Chief Ramos would want to be informed as soon as possible." *Id.*, ¶ 31. Plaintiff then retrieved the citation and placed it in his office "for the express and sole purpose of informing Chief Ramos of the contact with a politician's wife and thereby complying with the Chief's orders." *Id.* Plaintiff "did not remember the ticket nor touch it" until August 4, 2014. *Id.*, ¶¶ 32, 36. Plaintiff emphasizes that "Lugo did not share the source of his information [about the ticket] with [Plaintiff] nor indicate Lugo's desire to make the ticket disappear." *Id.*, ¶ 31.

It is hard to see how this last allegation is relevant. Plaintiff maintained that his conduct was done to comply with Ramos' policy. He does not allege that he was terminated because the ticket was in his desk when it was requested by Lara, and whether or not Lugo had "secreted" the ticket away and later replaced it, Plaintiff contends that he forgot about the ticket's existence in his office and did not look for or touch it until after August 4. Moreover, it appears that Lugo's conduct, like Plaintiff's, was undertaken in compliance with Ramos' policy. Plaintiff's allegations, accepted as true, do not show that Lugo violated Plaintiff's procedural due process rights related to his protected property interest in continued employment. The Court will dismiss Plaintiff's claims against Defendant Lugo.

### 6. Figueroa.

Defendant Figueroa is a police officer for the City of San Luis, and Plaintiff sues him in his official and individual capacities. Doc. 7, ¶ 20. Plaintiff contends that

Figueroa "directed the investigation [into the actions of Lugo, Harper and Plaintiff], limited the scope of the inquiry to protect a sitting politician and thereafter directed the termination of the Plaintiff to protect the politician." *Id.* Plaintiff adds that "Figueroa was subsequently rewarded by the defendants by being promoted by the City[.]" *Id.*

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Taking as true the allegations that Figueroa directed and limited the scope of the investigation, Plaintiff provides no explanation of how this conduct violated his Fourteenth Amendment rights. Plaintiff has not shown that he has a right to investigation without a limited scope. Moreover, Plaintiff has not alleged any facts to support his allegation that Figueroa "directed the termination" of Plaintiff. Doc. 7, ¶ 20. "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### 7. Gimbut.

Defendant Gimbut was the City Attorney at the time of the events in question. Plaintiff sues him in his individual and official capacities, arguing that he "knowingly guided the City Council and City Staff as it and they permitted and then ratified the actions of a sitting councilman to directly influence the law enforcement conduct of a police officer and then protected the City and the Councilman while assisting in the firing of the Plaintiff and others[.]" Doc. 7, ¶ 21. Plaintiff also alleges that Gimbut, together with the City Manager and the City Council, improperly directed the investigation of the citation dismissal in which he had a direct conflict of interest. *Id.*, ¶¶ 38-39. For the reasons already discussed, these allegations are insufficient to establish that Gimbut violated Plaintiff's Fourteenth Amendment rights.

## IV. Leave to Amend.

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Plaintiff may file an amended complaint by June 9, 2017. Because this will be Plaintiff's third complaint, he is advised that further failures to state a claim will not result in leave to amend.

**IT IS ORDERED:**

1. Defendant Lara's motion to dismiss (Doc. 80) is **granted.**
2. Defendant Van Riper's motion to dismiss (Doc. 77) is **denied.**
3. City Council Defendants' motion to dismiss (Doc. 73) is **granted.**
4. City Defendants' motion to dismiss (Doc. 75) is **granted.**
5. Plaintiff may file a second amended complaint by June 9, 2017.

Dated this 8th day of May, 2017.

_____
David G. Campbell
United States District Judge